IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE:                                        MDL Docket No 04-1606 VRW

DEEP VEIN THROMBOSIS                          ORDER
LITIGATION

This Document Relates To:

05-1366 VRW

<u>Rasmussen v Northwest Airlines, Inc, et al</u>
_____/

        On March 11, 2005, the court issued an order dismissing as preempted all non-Warsaw claims against airline defendants. (04-1606 VRW) Doc #151 (the "preemption order"). Subsequent to the preemption order, on April 5, 2005, the present case was transferred to this court from the United States District Court for the Western District of Washington pursuant to the Judicial Panel on Multidistrict Litigation's transfer order of June 22, 2004. (O5-1366 VRW) Doc #1. On May 18, 2005, the court ordered plaintiff to show cause why her non-Warsaw claims against defendant Northwest Airlines (Northwest) should not be dismissed pursuant to the preemption order. (05-1366 VRW) Doc #10 (OSC).

        On June 2, 2005, plaintiff filed her response to the OSC.

(05-1366 VRW) Doc #12.  Plaintiff asserts two reasons why her non-Warsaw claims against Northwest should not be dismissed.  First, she incorporates all of the arguments contained in non-Warsaw plaintiffs' November 16, 2005, joint opposition to airline defendants' motion to dismiss.  Id at 1;  (04-1606 VRW) Doc #39.  As these arguments were considered, and rejected, in the preemption order, they will not be reconsidered here.  Next, plaintiff presents an novel argument:  Plaintiff asserts that "defendant Northwest Airlines should not be dismissed under the federal preemption reasoning announced in the court's March 11, 2005, order because on April 27, 2005, the U[nited] S[tates] Supreme Court decided <u>Bates, et al v Dow Agrosciences, LLC</u>, [125 Sct 1788 (2005)], which is contrary to this court's March 11 order."  (05 1366 VRW at 2).

After careful examination, the court concludes that the Supreme Court's decision in <u>Bates</u> does not affect the preemption order.

I

In <u>Bates</u>, the Supreme Court analyzed whether the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 USC § 136 *et seq*, preempts certain state-law damages claims.  125 S Ct at 1793.

In 2000, appellee Dow Agrosciences, LLC (Dow), manufactured and sold a weed-killing pesticide called Strongarm to several Texas peanut farmers (the "farmers").  Id.  Strongarm's label stated that "[u]se of Strongarm is recommended for all areas where peanuts are grown."  Id.  Moreover, Dow's agents made equivalent representations regarding the use of Strongarm during

2

1  sales pitches and presentations. When the farmers applied
2  Strongarm to their farms -- whose soil had pH levels of 7.2 or
3  higher -- the pesticide severely damaged the peanut crops while
4  failing to control the growth of weeds. Id. The farmers asserted
5  that, contrary to its representations, Dow knew or should have
6  known that Strongarm would stunt the growth of peanuts in soils
7  with pH levels of 7.0 or greater.

8       The farmers informed Dow of their intent to file suit
9  under the Texas Deceptive Trade Practices Act based upon the
10 alleged misrepresentations contained in the Strongarm label and
11 made by Dow's agents. In response, Dow filed a declaratory
12 judgment action in federal court, asserting that the farmers'
13 state-law claims were expressly or impliedly preempted by FIFRA's
14 express preemption provision, 7 USC § 136v(b), which provides that
15 states "shall not impose or continue in effect any requirements for
16 labeling or packaging in addition to or different from those
17 required under this subchapter." Id. The farmers, in turn, filed
18 counterclaims in the federal action, alleging fraud, breach of
19 warranty, deceptive trade practices, negligence and strict
20 liability. Id. The district court concluded that all claims were
21 **expressly** preempted by § 136v(b).

22      The United States Court of Appeals for the Fifth Circuit
23 affirmed, reading § 136v(b) as "preempting any state-law claim in
24 which a judgment against Dow would induce it to alter its product
25 label." Id (citation and internal quotation marks omitted).
26 Applying this legal standard, the Fifth Circuit concluded that the
27 farmers' success before a jury on their claims for fraud, breach of
28 warranty and deceptive trade practices "would give Dow a strong

3

incentive to change its label" and thus were expressly preempted. Id at 1794.  Additionally, the Fifth Circuit found that the farmers' strict liability claim for defective design was essentially a disguised "failure-to-warn claim" because the farmers were arguing that Dow should have told them that Strongarm would harm crops planted in soil with a pH greater than 7.0.  Again, the Fifth Circuit concluded that success on these claims would "necessarily induce Dow to alter the Strongarm label."  Id (citation and internal quotation marks omitted).  The Fifth Circuit "employed similar reasoning to find the negligent manufacture claims preempted as well."  Id.  The Court, per Justice Stevens, reversed, holding that the Fifth Circuit had applied the wrong legal standard for analyzing FIFRA preemption.

The Supreme Court began by stating that the Fifth Circuit had "correctly h[e]ld that the term 'requirements' in § 136v(b) reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties."  Id at 1798 (citing Cipollone v Ligget Group, Inc, 505 US 504, 521 (1992)).  This holding is consistent with the preemption order which relied on Cipollone in rejecting non-Warsaw plaintiffs' argument that common-law suits and duties do not constitute a form of state regulation. Doc #151 (Premp Order) at 19 (stating that "'[state] regulation can be as effectively exerted through an award of damages as through some sort of preventative relief.'" (quoting Cipollone, 505 US at 521)).

The Supreme Court disagreed, however, with the legal test employed by the Fifth Circuit in determining whether the farmers' state-law claims fell within the scope of FIFRA's express

**4**

preemption provision.  <u>Bates</u>, 125 S Ct at 1799.  Specifically, the Court stated:

> The [Fifth Circuit] reasoned that a finding of liability on these claims would "induce Dow to alter [its] label." (citation omitted).  This <u>effects-based test</u> finds no support in the text of 136v(b), which speaks only of 'requirements.'  A requirement is a rule of law that must be obeyed; an event, such as jury verdict, that merely motivates an optional decision is not a requirement.

Id (emphasis added).

Because the text of § 136v(b) is devoid of any reference to the "effect" a state law or jury verdict may have on a manufacturer's decision to change its label, the Court concluded that "[i]t is highly unlikely that Congress endeavored to [prohibit] the [] attenuated pressure exerted by common-law suits.  The inducement test is not supported by either the text or the structure of [FIFRA]."  Id.

Plaintiff argues that <u>Bates</u> contradicts the preemption order's express preemption analysis under the Airline Deregulation Act (ADA) and gravely undermines the preemption order's implied preemption analysis under the Federal Aviation Act (FAA).


II

*Express Preemption*

The preemption order held that non-Warsaw plaintiffs' defective seating configuration claims were expressly preempted by the ADA because the costly liability imposed by success on these claims before a jury would necessarily require airline defendants to reconfigure their seating.  Premp Order (Doc #151) at 16-19. Non-Warsaw plaintiffs themselves recognized that requiring an

5

airline to reconfigure its seating would produce a "significant economic effect" and thus be preempted by the ADA. Doc #39 at 13. Accordingly, to the extent plaintiff implies that this court applied an "effects-based test" in examining whether a jury verdict would necessarily require an airline defendant to reconfigure its seating, the court agrees. While the preemption order did not employ this nomenclature, the court determined that success on the non-Warsaw claim for defective seat configuration would require (or perhaps induce) airline defendants to reconfigure their aircraft seating. Because reconfiguration would have a significant economic effect on the price charged by the airline defendants, these claims were expressly preempted by the ADA. Premp Order at 17-19.

Plaintiff now argues that, under <u>Bates</u>, this court erred in using an "effects-based" test to analyze whether defective seating configuration claims were preempted by the ADA. (05-1366 VRW) Doc #12 at 2 (arguing that "Congress did not intend [] explicitly in the ADA preemption clause * * * to prohibit the 'attenuated pressure exerted by common law suits.'"). In other words, plaintiff contends that the preemption order should not have considered whether success on plaintiffs' defective seating configuration claims would have the "effect" of inducing or requiring airline defendants' decision whether to reconfigure their aircraft seating. In plaintiff's view, the preemption order should have focused only on whether the airline defendants would be required by law to reconfigure their seating.

Plaintiff's argument is simply wrong; both the <u>text</u> of the ADA and the Supreme Court's <u>opinions</u> interpreting the statute endorse an "effects-based test" for analyzing the scope of the

6

1  ADA's express preemption provision.  Hence, the ADA differs from
2  FIFRA in this respect.
3           Unlike FIFRA, the <u>text</u> of the ADA directs courts to
4  examine the "effect" a state law has on prices charged by an
5  airline (i e, indirect regulation):

>  [A] State * * * may not enact or enforce a law,
>  regulation, or other provision having the force and
>  <u>effect</u> of law related to a price, route or service
>  of an air carrier * * *.
>  49 USC § 41713(b)(1) (emphasis added).

9  See also <u>Witty v Delta Air Lines, Inc</u>, 366 F3d 380, 383 (5th Cir
10 2004) (holding that the ADA "not only preempts direct regulation of
11 prices by states, but also preempts indirect regulation relating to
12 prices that have the forbidden significant economic <u>effect</u> on such
13 prices.") (emphasis added).  This greatly distinguishes the ADA
14 from FIFRA, for as the Court said in <u>Bates</u>:  "This effects-based
15 test finds no support in the text of [FIFRA]."  125 Sct at 1799.
16          Moreover, the Supreme Court has endorsed an "effects-
17 based test" in analyzing whether state laws are preempted by the
18 ADA.  In <u>Morales v Trans World Airlines, Inc</u>, 504 US 374, 388
19 (1992), the Court, per Justice Scalia, held that state law
20 restrictions on airline fare advertising were preempted by the ADA
21 not only because such restrictions "explicitly reference[d] fares,"
22 but also because they "have the forbidden significant <u>effect</u> upon
23 fares."  <u>Bates</u> does not even cite <u>Morales</u>, much less purport to
24 overrule its endorsement of an "effects-based test" to analyze the
25 preemptive scope of the ADA.
26          Put simply, plaintiff seizes upon the Court's more
27 restrictive preemption analysis of FIFRA and attempts to extend it
28 to the ADA.  Such an extension is not warranted.  The two statutes

7

1 employ different language and thus have produced two different
2 Supreme Court cases interpreting their preemptive scopes.  See
3 Bates, 125 S Ct 1788; Morales, 504 US 374.  Indeed, Bates advocates
4 examining preemption on a statute-by-statute basis.  Bates, 125 S
5 Ct at 1800 (chastising Dow for ignoring the "rather obvious textual
6 differences between the" preemption statute at issue in Cipollone
7 and FIFRA).  Plaintiff ignores this aspect of Bates completely.
8       Accordingly, the preemption order was correct to employ
9 an "effects-based test" (specifically the "significant economic
10 effect" test) in determining whether non-Warsaw plaintiffs'
11 defective seating configuration claims were expressly preempted by
12 the ADA.  The text of the ADA and the Court's opinions interpreting
13 it support this view.

### III
### *Implied Preemption*

17       Although Bates did not address implied preemption,
18 plaintiff argues that Bates calls into question the preemption
19 order's determination that the FAA impliedly preempts state law
20 claims premised on defective seat design and failure to warn of
21 DVT.  Premp Order at 20-29; (05-1366 VRW) Doc #12 at 2 (stating
22 that "Bates is also *instructive* as to the scope of implied
23 preemption of plaintiff's failure to warn and defective design
24 claims") (emphasis added).
25       Plaintiff appears to argue (as did her fellow non-Warsaw
26 plaintiffs) that the FAA has no preemptive effect.  To support this
27 argument, plaintiff asserts that in Bates, the Court criticized Dow
28 for "advocating an 'amputated' version of [FIFRA]."  (05-1366 VRW)

8

Doc #12 at 2 (citing <u>Bates</u>, 125 S Ct at 1801). While Dow's amputated interpretation of FIFRA is not relevant to the present case, plaintiff makes the generalized assertion that the preemption order likewise "amputated" the FAA because it overlooked the "minimum standards" provision of the FAA (49 USC § 44701(a)(5)) which, according to plaintiff, evidences Congress' intent that the FAA be given <u>no</u> preemptive effect whatsoever. Id. This argument failed to persuade the first time it was offered and it fails to persuade now.

As the court stated in the preemption order, this "minimum standards" argument is misplaced, as the Ninth Circuit has already determined that the FAA undoubtedly has implied preemptive effect. Premp Order at 24. See <u>World Airways, Inc v Int'l Brotherhood of Teamsters</u>, 578 F2d 800, 803 (9th Cir 1978) (concluding that since Congress enacted the FAA, "federal law has pre-empted the area of aviation."); see also <u>Skysign Int'l, Inc v City and County of Honolulu</u>, 276 F3d 1109, 1116 (9th Cir 2002) (stating that although Congress itself has made no affirmative decision to "completely occupy[] the field" of aviation safety, it "has left open the door for the FAA to do so through the use of its authority to develop regulations for the use of the navigable airspace" (citation omitted)). Accordingly, this court would be ignoring clear Ninth Circuit precedent if it were to hold that the FAA has no implied preemptive effect based upon the "minimum standards" provision of the statute.

The court advises plaintiff (as it did her fellow non-Warsaw plaintiffs) that if she wishes to argue that the FAA has no preemptive effect and that <u>Christensen</u> was wrongly decided, she

should do so to the Ninth Circuit, not this court, for it is the Ninth Circuit's prerogative alone to overrule one of its precedents.  Cf <u>State Oil Co v Khan</u>, 522 US 3, 20 (1997).

Finally, plaintiff argues that <u>Bates</u> calls into question the preemption order's "uniformity argument" (i e, that state law claims would lead to non-uniformity among the states).  (05-1366 VRW) Doc #12 at 3; (04-1606 VRW) Doc #151 at 29 (stating that "non-uniformity is anathema to the FAA.").

In <u>Bates</u>, Dow appears to have made the argument that allowing the farmers' claims to proceed to a jury would lead to a "crazy-quilt" of FIFRA standards among the states.  <u>Bates</u>, 125 S Ct at 1803.  In response, the Court stated that

> Dow * * * greatly overstate[s] the degree of uniformity and centralization that characterize FIFRA.  In fact, the statute authorizes a relatively decentralized scheme that preserves a broad role for state regulation.

Id at 1802.  Accordingly, the Court gave little weight to Dow's assertions of non-uniformity.

Such is not the case with the FAA.  The Ninth Circuit has held that "the whole tenor of the [FAA] and its principal purpose is to create and enforce one unified system of flight rules." <u>United States v Christensen</u>, 419 F2d 1401, 1404 (9th Cir 1969). Moreover, "'[t]he [FAA] was passed by Congress for the purpose of centralizing in a single authority — indeed, in one administrator — the power to frame rules for the safe and efficient use of the nation's airspace.'"  Id (quoting <u>Air Line Pilots Association Int'l v Quesada</u>, 276 F2d 892, 894 (2d Cir 1960)).

<u>Bates</u>' analysis of the uniformity mandated by FIFRA is

10

1 inapposite to Ninth Circuit precedent interpreting the strict
2 uniformity mandated by the FAA.

IV

In sum, <u>Bates</u> is not "contrary to this court's March 11, 2005, order" regarding preemption of the non-Warsaw claims; it is quite inapposite.  Because plaintiff's arguments fail to persuade, she has failed to show cause why her non-Warsaw claims against Northwest should not be dismissed under the preemption analysis announced in the March 11, 2005, order.  Accordingly, all claims against Northwest are DISMISSED with prejudice.

IT IS SO ORDERED.



VAUGHN R WALKER

United States District Chief Judge

11